UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

YSEMIA O.,[1] 6:20-cv-1715-JR

Plaintiff,

OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Russo, Magistrate Judge:

Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's applications for disability insurance benefits and supplemental security income benefits. For the reasons stated below, the Commissioner's decision is affirmed.

Plaintiff asserts disability beginning August 2, 2017, due to depression, anxiety, and one leg being shorter than the other. Tr. 242, 255. After a hearing held on January 17, 2020, an

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

Administrative Law Judge (ALJ) determined plaintiff was not disabled. Tr. 38, 17-32. Plaintiff contends the ALJ erred by: (1) rejecting medical opinions; (2) rejecting plaintiff's symptom testimony[2]; and (3) failing to adequately consider plaintiff's obesity.

A. Medical Opinion

1. Nurse Practitioner Jennifer DiFrancesco

Plaintiff asserts the ALJ failed to provide specific and legitimate reasoning supported by substantial evidence in the record to reject Nurse Practitioner DiFrancesco's opinion. The Commissioner argues under the new regulations applicable to plaintiff's application, the ALJ need consider only supportability, consistency, the relationship with the claimant, length of treatment relationship, frequency of examinations, examination relationship (i.e., in person versus record), specialization, and other factors such as an understanding of disability policies and requirements. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. 20 C.F.R. § 1404.1520c(b)(2). Plaintiff contends that until the Ninth Circuit addresses the new regulations, this Court is bound by precedent applying the clear and convincing or specific and legitimate standards to an ALJ's repudiation of a medical opinion. Judge Ricardo Martinez of the Western District of Washington provides a persuasive assessment of the current state of the analysis related to an ALJ's treatment of medical opinion:

> The Commissioner argues new regulations promulgated in 2017 change the standard by which the ALJ's reasons for rejecting medical providers' opinions are measured…. Under current Ninth Circuit precedent, an ALJ must provide "clear and convincing" reasons to reject an uncontradicted opinion from a treating or examining doctor, and "specific and legitimate" reasons to reject a contradicted opinion from such doctor. Lester v. Chater, 81 F.3d 821, 830–31 (9th Cir. 1995). The Commissioner's argument is twofold. First, the Commissioner argues the new regulations eliminated a hierarchy among medical opinions, superseding any

[2] Plaintiff's opening brief identified an additional issue that is whether the ALJ provided specific, clear, and convincing reasons to discredit plaintiff's subjective symptom testimony. However, plaintiff did not discuss this issue in the body of the brief. In her reply, plaintiff states the issue was presented in error. As plaintiff declined to address the issue, the Court declines to find the ALJ erred with respect to plaintiff's testimony.

priority the Ninth Circuit's current standards were based upon. Second, the Commissioner argues the new regulations no longer require an ALJ to reject an opinion at all, instead requiring an ALJ to merely state how persuasive he or she found an opinion.

The clear and convincing standard for rejecting uncontradicted opinions has its origins in general administrative law. In White Glove Building Maintenance, Inc. v. Brennan, 518 F.2d 1271 (9th Cir. 1975), the Ninth Circuit held an administrative factfinder erred in rejecting uncontradicted testimony "without a detailed explanation of his reasons for so rejecting." Id. at 1276. A few months later, the Ninth Circuit applied this holding more specifically to the uncontradicted opinions of two doctors in a Social Security disability case, holding an ALJ must "expressly state clear and convincing reasons" for rejecting such opinions. Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)…. The Ninth Circuit continues to cite this standard, although it has not had the opportunity to do so in a case where the Commissioner's new regulations apply. See Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020).

The genesis of the "specific and legitimate" standard for contradicted opinions was the Ninth Circuit's decision in Murray v. Heckler, 722 F.2d 499 (9th Cir. 1983). In Murray, the ALJ rejected the opinions of a treating doctor in favor of the opinions of an examining doctor. See id. at 501. The Ninth Circuit reviewed precedent from other circuits and determined an ALJ must ordinarily give more weight to the opinions of a treating doctor because that doctor is "'employed to cure'" the claimant and has a "'greater opportunity to observe and know the patient as an individual.'" Id. at 502 (quoting Bowman v. Heckler, 706 F.2d 564, 568 (5th Cir. 1983)). Thus, "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Murray, 799 F.2d at 502. The Ninth Circuit made no reference to regulations promulgated by the Social Security Administration regarding treatment of medical opinions in reaching its conclusion. See id.

In 1991, the Commissioner promulgated regulations setting forth standards for reviewing medical regulations. 56 Fed. Reg. 36932-01, 1991 WL 142361 (Aug. 1, 1991). Those regulations established a hierarchy mirroring the one set out by the Ninth Circuit, in which treating sources are given more weight than non-treating sources, and examining sources are given more weight than non-examining sources. See id. at *36935–36; 20 C.F.R. §§ 404.1527(c), 416.927(c). The Ninth Circuit mentioned these regulations in its 1995 opinion in Lester, and continued to rely on the "clear and convincing" and "specific and legitimate" standards. See Lester, 81 F.3d at 830–31.

In 2017, the Commissioner revised its regulations to eliminate the hierarchy of medical opinions. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight ... to any medical opinion(s) ... including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The Commissioner's new regulations still require the ALJ to explain

> his or her reasoning, and to specifically address how he or she considered the supportability and consistency of the opinion. See 20 C.F.R. §§ 404.1520c, 416.920c.
>
> The Ninth Circuit has not yet considered whether the 2017 regulations will cause it to reevaluate the standards set forth in Day and Murray for review of medical opinions. This Court is bound by precedent of the Ninth Circuit and may not overrule a decision from that court. See In re Albert-Sheridan, 960 F.3d 1188, 1192–93 (9th Cir. 2020); Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001); see also Kimble v. Marvel Entm't, LLC, 576 U.S. 446, 455 (2015) ("Overruling precedent is never a small matter."). The history of the "clear and convincing" standard indicates it will not likely be altered by the new regulations, as it was based on evidentiary principles in administrative law, and not on a hierarchy of opinions. See Day, 522 F.2d at 1156; White Glove Bldg. Maint., 518 F.2d at 1276.
>
> The new regulations also do not clearly supersede the "specific and legitimate" standard. That standard is not an articulation of how ALJs must weigh or evaluate opinions, but rather a standard by which the court evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence. Whatever factors the Commissioner considers in evaluating a medical opinion, he must explain his reasoning to allow for meaningful judicial review, and the Ninth Circuit's "specific and legitimate" standard is merely a benchmark against which the Court evaluates that reasoning.
>
> The Commissioner next argues the standards from Murray no longer apply because ALJs "are not to accept, reject, or even give any specific evidentiary weight to a medical opinion," but instead articulate only how "persuasive" the opinion is…. This argument lacks merit. If an ALJ finds an opinion "unpersuasive," and does not account for it in a claimant's RFC, the ALJ has rejected that opinion. Even under the Commissioner's new regulations, the ALJ must articulate why she has rejected the opinion. See 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Kathleen G. v. Comm'r of Soc. Sec., 2020 WL 6581012, at *2–3 (W.D. Wash. Nov. 10, 2020).

However, applying existing precedent would only require the ALJ to provide a germane reason to reject to the opinion of Nurse Practitioner DiFrancesco who would have been considered an "other source" rather than an acceptable medical source. See Shorter v. Saul, 777 F. App'x 209, 211 (9th Cir. 2019) ("Because Ms. Lockwood was a Nurse Practitioner …, the ALJ was only required to provide germane reasons to reject her opinions. See Britton v. Colvin, 787 F.3d 1011, 1013 (9th Cir. 2015) (concluding nurse practitioners are 'other sources')"). As such, regulations applicable prior to March 27, 2017, would have permitted an ALJ to reject such opinion based on inconsistency with the treatment record. See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir.

2012) (including inconsistency with the treatment record as a germane reason to reject a medical opinion). However, the new regulations now include nurse practitioners as acceptable medical sources. 20 C.F.R. § 404.1502. As such, while the new regulations did not eliminate the need for ALJs to articulate their reasoning for rejecting medical opinion with sufficient specificity, it did subject what was once considered "other source" opinion to an analysis requiring more than simply specifying a germane reason to reject it.

In summary, the new regulations still require ALJs to articulate their reasoning, specifically addressing how they considered the consistency and supportability factors. Titus L.S. v. Saul, 2021 WL 275927 (C.D. Cal. Jan. 26, 2021). An ALJ must do so in sufficient detail to allow a reviewing court to determine whether that reasoning is free of legal error and supported by substantial evidence. See Ford, 950 F.3d at 1154; Zhu v. Comm'r of Soc. Sec., 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (applying the substantial evidence standard under the new 2017 regulations).

Plaintiff has been Nurse Practitioner DiFrancesco's patient since June 2019 and sees her two to three times a year. Tr. 987. DiFrancesco diagnosed plaintiff with post-polio syndrome, post- traumatic stress disorder, depression, weakness, and decreased sensation in her right leg. Tr. 987. DiFrancesco described clinical findings related to plaintiff's condition including weakness, gait instability, and depressed mood. Tr. 988.

Nurse Practitioner DiFrancesco opined that as a result of plaintiff's condition, plaintiff could only walk a quarter block, sit for 20 minutes at a time, stand/walk for 30 minutes at a time, sit for two to three hours total in a day, stand/walk for two to three hours total in a day, must be able to shift positions at will, requires unscheduled breaks once per hour for 40 minutes, could never lift 10 pounds or more, is limited in repetitive reaching/handling/fingering to only one-third

of the day, must elevate her legs periodically, is likely to be off task 25% of the workday or more, and will miss more than four days of work per month. Tr. 989-91.

The ALJ rejected the opinion stating:

> Although Ms. DiFrancesco has a treatment relationship with the claimant, her opinion is found to be unpersuasive for being largely unsupported with reference to specific objective findings and inconsistent with the above-described record as a whole as it relates to the claimant's physical functioning. As set forth above, this shows improvement in terms of the claimant's physical functioning with physical therapy and use of orthotics such that just before Ms. DiFrancesco completed the form setting forth her opinion, in October and November 2019, the claimant reported having gone to gym and done weight training while there, and retaining the ability to clean her house or attend multiple appointments in one day (Exhibit 13F.147; 18F.4). Such reports are inconsistent with the degree of limitation opined by DiFrancesco. Along these lines, a finding that Ms. DiFrancesco's opinion is based largely on advocating for the claimant rather than on objective medical evidence is supported by the fact that she opined that the claimant is limited with respect to the use of both of her hands. Conversely, the medical evidence of record establishes only impairments affecting one of the claimant's lower extremities and, in contrast to her hearing testimony, shows minimal complaints by the claimant of numbness in her hands.

Tr. 28.

The ALJ noted Chandra Basham, M.D., found plaintiff could perform light work with some postural limits due to obesity and is limited to standing/walking for four hours. Tr. 28, 81-83. The ALJ similarly noted Jeffrey Merrill found plaintiff even less limited than Dr. Basham. Tr. 29, 99-101. The ALJ next noted that Dr. J. Boyd, Psy.D., found plaintiff's depressive disorder to be non-severe with only mild limitations in adapting or managing oneself. Tr. 29, 68-70.

Nurse Practitioner DiFrancesco did not point to objective medical findings to support her opinion, but rather relied on general observations of weakness, instability, and mood. The ALJ also noted inconsistent medical evidence,[3] and daily activities. Plaintiff reported engaging in work activity from March to May 2018 providing child-care up to full-time. Tr. 26, 523 (on 3/8/18

[3] Although plaintiff argues the ALJ failed to credit psychologist Dr. Paula Belcher's "consistent evidence of attention and concentrations issues," (Plaintiff's Brief (ECF 14) at p. 11), the ALJ generally accepted Dr. Belcher's opinion as discussed below.

reports she started babysitting and working for DHS child-care program); 532 (working in child-care full-time since early March); 537 (on 3/18/18 still working and likes it a lot). The ALJ noted improvement with treatment such as a brace so that by April 2019, plaintiff reported no pain or numbness in her foot and her knee was improved. The ALJ further noted a May 2019 physical exam showed normal gait and strength. Tr. 24-25, 789 (declined to come to final therapy appointment and reported that her new brace was working much better and that she no longer had pain and numbness in her foot and her knee pain was much better as well); 821 (Gait observed WNL, Strength 5 out of 5 and symmetric). Accordingly, the ALJ articulated her reasoning, specifically addressing the consistency and supportability factors in sufficient detail supported by substantial evidence. The ALJ did not err with respect to Nurse Practitioner DiFrancesco's opinion.

<u>2. Dr. Paula Belcher</u>

Dr. Belcher provided the following comments about plaintiff after conducting a mental status exam in January 2020:

> She recited the alphabet but omitted the letter "X." She named two of the last five presidents, and, when asked to name the states bordering Oregon, she responded, "Mexico, San Diego, and Canada." She correctly spelled the word "world" both forward and backward. She completed Serial 3s with five errors, at times counting backward by 2s rather than 3s. She could recall none of three unrelated words she was asked to remember for about 10 minutes. These data, together with WAIS-IV scores, indicate she has moderate to severe impairment in attention, concentration, and memory.
>
> ….
>
> Her scores yielded a Full Scale IQ of 57, placing her at the 0.2 percentile and in the extremely low range of general intellectual functioning when compared to persons her age. Because all measures of cognitive ability contain some degree of error, the client's score represents an estimate of her true IQ. There is a 95% probability that her true IQ lies between 54 and 62.

Tr. 993, 997.

Dr. Belcher nonetheless opined:

> Although she has had successful employment in the past, with one position for a year, her employment opportunities **may be limited because of her low intellectual abilities**. **She is much more functional than her IQ scores would suggest. She accomplishes household tasks without difficulty and is raising two children. She shops and drives. Any other mental health complaints would not seem to interfere with her ability to maintain employment.**

Tr. 997 (emphasis added).

Plaintiff asserts the ALJ erred in rejecting Dr. Belcher's opinion that plaintiff's employment opportunities may be limited. However, Dr. Belcher did not actually state what limitations plaintiff's IQ would cause and noted she is significantly more functional than the scores indicate. Otherwise, Dr. Belcher noted plaintiff's mental complaints do not interfere with plaintiff's ability to maintain employment.

The ALJ did not reject the opinion. Indeed, the ALJ found Dr. Belcher's opinion persuasive. Tr. 27. The ALJ noted that following an exam in July 2019, Dr. Belcher opined plaintiff had up to moderate limitations in terms of understanding and remembering complex instructions, carrying out complex instructions, and making judgments on complex work-related decisions; and no limitations in terms of understanding and remembering simple instructions, carrying out simple instructions, making judgments on simple work-related decisions, interacting appropriately with supervisors, coworkers, or the public, or responding to changes in a routine work setting. Tr. 27, 649-50. The ALJ noted that Dr. Belcher's opinion changed only slightly following the January 2020 exam noted above in which she stated plaintiff continues to have no limitations in terms of interacting appropriately with supervisors, coworkers, or the public, as well as responding to changes in a routine work setting, but that plaintiff has mild limitations in understanding and remembering simple instructions, carrying out simple instructions, and making judgments on simple work-related decisions; a moderate limitation in terms of understanding and remembering complex instructions; and marked limitations in terms of carrying out complex

instructions and making judgments on complex work-related decisions. Tr. 27, 999-1000. The ALJ incorporated Dr. Belcher's opinion by limiting plaintiff to understanding, remembering, and carrying out only simple, routine, and repetitive tasks; making only simple work-related decisions; and no assembly line pace work. Tr. 22. The ALJ's interpretation of Dr. Belcher's opinion is reasonable. Accordingly, the ALJ did not err with respect to Dr. Belcher's opinion. See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ does not err when merely interpreting medical opinion and not discrediting it.).

B. Obesity

Plaintiff asserts that although the ALJ found plaintiff's obesity constitutes a severe impairment for purpose of step two of the evaluation process, she erred by failing to reach any conclusion on whether obesity caused any mental limitations. However, the ALJ limited plaintiff to a light range of work with other limitations to account for plaintiff's obesity. Tr. 22; e.g., Tr. 82 (postural restrictions/obesity). Plaintiff does not point to evidence in the record to support limitations beyond those appropriately determined by the ALJ. Accordingly, the ALJ did not commit harmful error in assessing limitations attributable to plaintiff's obesity even if she was required to explain whether obesity caused mental limitations. See Social Security Ruling 02-1p ("we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations"); McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm).

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed, and this action is dismissed. The Clerk is directed to enter a judgment.

DATED this 13th day of January, 2022.

/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge